IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


PATRICK CONWAY                              :
                                            :
                    Plaintiff               :
                                            :
        v.                                  :
                                            :        3:CV-04-02376
C.P. Rail System , d/b/a                    :
DELAWARE & HUDSON RAILWAY,                  :        (Chief Judge Vanaskie)
                                            :
                                            :
                    Defendant               :


MEMORANDUM

On October 28, 2004, Plaintiff Patrick Conway commenced this action against Defendant

C.P. Rail System d/b/a Delaware & Hudson Railway alleging disability discrimination in

employment under the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12112-12117.  Mr.

Conway alleges that Defendant discriminated against him in 1999 when Defendant allegedly

failed to accommodate his work-related injuries.  This Court has jurisdiction pursuant to 28

U.S.C. § 1331.

On December 27, 2004, Defendant moved to dismiss this action pursuant to Federal

Rule of Civil Procedure 12(b)(6).  In the motion to dismiss, Defendant argues that Mr. Conway

failed to timely file a charge of discrimination with the Equal Employment Opportunity

Commission (EEOC) and that Plaintiff has failed to establish that the running of the limitations

period should be equitably tolled.  Defendant alternatively contends that a release executed by

Mr. Conway in February of 1999, discharging Defendant from any liability on "any labor claims,

employment claims or discrimination claims under the American[s] with Disabilities Act," bars

this litigation.  (Def.'s Br. in Supp. of Mot. to Dismiss at Exhibit C, Dkt. Entry 6.)  Because it is

clear that Mr. Conway did not present an administrative claim of discrimination within the filing

period and equitable tolling does not apply here, Defendant's motion to dismiss will be granted.[1]

I.      BACKGROUND

        Patrick Conway was employed by Defendant from April 1, 1976 until February 4, 1999.

On July 27, 1997, he was injured when a train he was operating collided with another train

owned by Defendant and operated by Defendant's employee, Mr. Dunham.  Defendant

commenced disciplinary proceedings as a result of the collision.  An administrative hearing was

held on March 28, 1998.  Mr. Conway was unable to attend the hearing due to the injuries he

sustained in the mishap.  Mr. Conway was found guilty of rules violations and assessed thirty

(30) demerits.  Mr. Conway's union, the Brotherhood of Locomotive Engineers, appealed the

decision.

        On January 12, 1998, Mr. Conway filed a suit in this Court against Defendant under the

Federal Employers Liability Act, 45 U.S.C. §§ 51-60, for personal injuries he sustained in the

train collision.  (Conway v. Delaware & Hudson Ry. Co., Inc., 3:CV-98-0048.)  The case

---

        [1] In light of the fact that this case is clearly time-barred, there is no need to address the
effect of the release.

proceeded to trial in January of 1999.  The jury found Defendant eighty percent and Plaintiff

twenty percent responsible for the accident.  On January 25, 1999, judgment in the amount of

$536,000 was awarded in favor of Mr. Conway.

On February 4, 1999, the parties reached an amicable resolution of the Federal

Employers' Liability Act litigation for the sum of $500,000.  As part of the settlement, Mr.

Conway signed a release voluntarily resigning from employment with Defendant and

relinquishing his rights to any claims arising out of the July 27, 1997 train accident.[2]  From the

time of the accident until the date he resigned his employment, Mr. Conway was not offered an

employment position to accommodate his alleged disability.  On February 10, 1999, shortly after

the settlement, Defendant assigned Mr. Dunham, the other person involved in the train collision,

to an in-house claims adjuster position.

Plaintiff alleges that in December of 1999 he met with Assistant United States Attorney

("AUSA") John Gurganus[3] "to open a claim for discriminatory practices with the manner in which

his former employer handled his post-injury work status."  (Complaint, ¶ 16.)  Plaintiff further

avers that he "was informed to exhaust all his administrative remedies."  (Id.)

At the time he met with AUSA Gurganus, Mr. Conway's appeal to the National Railway

---

[2]The release lists the date of the accident as July 26, 1997, but the parties refer to July 27, 1997 as the date of the accident.

[3] There is a spelling discrepancy error in Plaintiff's Complaint with respect to the Assistant United States Attorney's name.  In Plaintiff's Complaint it is spelled "Gutgannus."

Adjustment Board (NRAB) from the disciplinary action taken against him in regard to the 1997 accident was still pending.  In April of 2003, the NRAB dismissed Mr. Conway's appeal, finding that his resignation from employment pursuant to the February, 1999 settlement rendered the matter moot.

In September of  2003, Mr. Conway wrote to the Department of Justice, requesting an investigation of Defendant's alleged discriminatory actions.  (Complaint, ¶ 18.)  The Civil Rights Division of the Department of Justice responded by letter dated November 18, 2003, stating that it had "no authority under Title VII to pursue a charge of discrimination against a private employer or union," and could not provide any "opinion as to whether [Mr. Conway's] civil rights have been violated."  (Complaint, Ex. 1.)  The letter further stated:

> It is important that a charge be filed with the EEOC as soon as possible, since to be timely under Title VII a charge of discrimination must be filed with the EEOC within a certain period after the alleged act of discrimination occurred and no later than 300 days in a deferral state such as Pennsylvania.

(Complaint, Ex. 1.)[4]

On August 2, 2004, Mr. Conway filed a charge of employment discrimination, asserting that he believed that Defendant had violated the ADA by not allowing him "to return to work because of my disability. . . ."  (Complaint, Ex. 3.)  By letter dated August 11, 2004, the EEOC dismissed Mr. Conway's charge of discrimination.  (Complaint, Ex. 2.) The EEOC also sent a

---

[4] The Department of Justice letter contains no intimation that Mr. Conway had complained of disability discrimination or was asserting a claim under the ADA.

Notice of Suit Rights, which placed a ninety (90) day time limit on Mr. Conway to file a suit for employment discrimination.  Mr. Conway received the letter and the notice on August 13, 2004. Mr. Conway then commenced this action on October 28, 2004.

## II.    DISCUSSION

The averments of the complaint show that Plaintiff resigned from employment with Defendant on February 4, 1999.  The Complaint's allegations also show that by no later than December of 1999, Mr. Conway knew that Mr. Dunham had been appointed as a claims adjuster, a sedentary position which Mr. Conway believes he was qualified to fill.  The Complaint further shows that Mr. Conway suspected employment discrimination no later than December of 1999.  An administrative charge of discrimination was not filed until nearly five years later.

The ADA has adopted the enforcement scheme and remedies of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Title VII).  Fosburg v. Lehigh Univ., No. Civ. A. 98-CV-864, 1999 WL 124458, at *5 (E.D. Pa. Mar. 4, 1999).  Because Filing an EEOC discrimination charge is a prerequisite to bringing a civil suit under Title VII, it is a perquisite to bringing a civil suit under the ADA as well.  Davidson v. Amer. Online, Inc., 337 F.3d 1179, 1183 (10th Cir. 2003).  If the charge is not timely filed, then the suit is time-barred. Id.

For Mr. Conway to proceed on the above-captioned cause of action he was required to

5

file an employment discrimination charge with the EEOC within three-hundred (300) days after

his discrimination claims accrued.  "[A] claim accrues as soon as a potential plaintiff either is

aware, or should be aware after a sufficient degree of diligence, of the existence and source of

an <u>actual injury</u>," <u>Podobnik v. U. S. Postal Serv.</u>, No. 04-3059, 2005 WL 1059248, at *3 (3d Cir.

May 5, 2005) (citing <u>Keystone Ins. Co. V. Houghton</u>, 863 F.2d 1125, 1127 (3d Cir. 1988)), not

when the plaintiff is aware that he or she has a legal claim.  <u>Id</u>.  Mr. Conway was aware of the

alleged discriminatory employment practices at the latest by December of 1999 when he met

with AUSA Gurganus.  In his brief Mr. Conway stated:

> Plaintiff[,] after learning about the deceptive and conspiratorial
> practices of the Defendant in keeping him from the knowledge as to
> the existence, and/or opening of the assistant claims adjuster
> position[,] had sought and met with the United States Attorney John
> [Gurganus] in December 1999.  In that Conference <u>he provided
> Attorney [Gurganus] with information regarding the discriminatory
> practices of the Defendant</u> . . . .

(Pl.'s Br. in Opp'n to Mot. to Dismiss at 11, Dkt. Entry 7)(emphasis added.)  Assuming the time

period did not begin to run until Mr. Conway met with AUSA Gurganus in December of 1999,

Mr. Conway missed the three-hundred (300) day filing deadline by almost four years.  This

action is plainly untimely unless the running of the limitations period was somehow suspended.

Plaintiff shoulders the burden of showing that equitable tolling of the limitations period is

appropriate.  <u>Campbell v. Potter</u>, No. Civ.A.01-4517, 2004 WL 2861871, at *2 (E.D. Pa. Dec. 9,

2004).  There are three principal situations where a plaintiff can show that equitable tolling may

6

be applied: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver v. Levin, Fishbein, Sedran, & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994); see also Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 845 (3d Cir. 1992). Although it is recognized that these three principal situations are non-exclusive, the relief granted through equitable tolling is to be applied sparingly. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990); see also Campbell, 2004 WL 2861871, at *3. The federal courts do not apply equitable tolling when the claimant has failed to exercise reasonable diligence to pursue his or her legal rights. Burley v. Martin's Super Mkts., Inc., 741 F. Supp. 161, 164 (N.D. Ind. 1990). For Plaintiff to prove reasonable diligence was used, he needs to show that he diligently tried to discover the necessary information for his claim, but was unsuccessful. Oshiver, 38 F.3d at 1390 (citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 452 (7th Cir. 1990)).

Although invoking the doctrine of equitable tolling, Plaintiff neither alleged in his Complaint nor asserted in his Brief any circumstance that would warrant suspending the limitations period for the duration necessary to allow this case to proceed. Instead, he complains of the unfairness of the disciplinary sanction he received, and expresses bitterness over the fact that the other person involved in the mishap received a sedentary position while he felt compelled to resign his employment to settle his Federal Employers' Liability Act claim. Mr.

Conway knew that Mr. Dunham received the position no later than December of 1999.  While

Mr. Conway was pursuing an appeal from the employment discipline he received in 1998, there

is nothing to indicate that he attempted to inform himself of the administrative prerequisites for

an ADA claim.  He simply sat on the matter until August of 2004, with intermittent inquiries to

Department of Justice officials.  Due diligence on his part is plainly missing.

     The statute of limitations cannot be tolled in this case because Defendant did not actively

mislead the plaintiff regarding the charge of discrimination and "the facts which would support

the plaintiff's cause of action [were] apparent, or should [have been] apparent to a person with a

reasonably prudent regard for his or her rights."  <u>Oshiver</u>, 38 F.3d at 1389.  Nor were there

extraordinary circumstances alleged to be present here.  Finally, Plaintiff has not shown that he

mistakenly asserted his ADA claim in the wrong forum.[5]  Thus, equitable tolling is not

appropriate here.

## III.    CONCLUSION

     For the reasons set forth above, Defendant's motion to dismiss will be granted.  An

appropriate order follows.

<u>s/ Thomas I. Vanaskie</u>
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

Dated: June 30, 2005

---

[5] Even if he claimed that the NRAB proceeding was believed to cover his ADA claims, he cannot avoid the fact that those proceedings terminated in April of 2003, more than one year before he filed his administrative charge of discrimination with the EEOC.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK CONWAY                          :
                                        :
                    Plaintiff           :
                                        :
        v.                              :
                                        :      3:CV-04-02376
C.P. Rail System , d/b/a                :
DELAWARE & HUDSON RAILWAY,              :      (Chief Judge Vanaskie)
                                        :
                                        :
                    Defendant           :

## ORDER

NOW, THIS 30th DAY OF JUNE, 2005, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

    1.    Defendant's Motion to Dismiss (Dkt. Entry 4) is GRANTED.

    2.    The Clerk of Court is directed to mark this matter CLOSED.

                                    s/ Thomas I. Vanaskie
                                    Thomas I. Vanaskie, Chief Judge
                                    Middle District of Pennsylvania